IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LAWRENCE J. GERRANS,<br>  Petitioner, | §<br>§<br>§ | |
| v. | § | Cause No. EP-24-CV-284-DCG |
| | § | |
| WARDEN FCI La Tuna-Camp,<br>  Respondent. | §<br>§<br>§ | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Lawrence J. Gerrans, federal prisoner number 25027-111, challenges the computation of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1 at 6–8. He also alleges violations of his civil rights. *Id*. at 7–8. His opposed petition is dismissed for the following reasons.

## BACKGROUND

Gerrans is a 54-year-old inmate confined at the United States Penitentiary in Tucson, Arizona. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 25027-111, last visited Mar. 27, 2025). His projected release date is March 14, 2028. *Id*.

When Gerrans filed his petition, he was a prisoner La Tuna Federal Correctional Institution (FCI La Tuna) in Anthony, Texas, which is within the jurisdiction of this Court. Pet'r's Pet., ECF No. 1 at 1.

Gerrans took millions of dollars from Sanovas, Inc., a medical device start-up company that he co-founded. *United States v. Gerrans*, 477 F. Supp. 3d 1035, 1040 (N.D. Cal. 2020), *aff'd*, No. 20-10378, 2022 WL 73051 (9th Cir. Jan. 7, 2022). He billed the company for personal expenses and took millions of dollars from Sanovas by fraudulent invoices and book entries, using shell entities, and lying to the board of directors. *Id*. He purchased a multi-million-dollar home, extravagant jewelry and home furnishings, vacations, and expensive cars. *Id*. He was interviewed

by the FBI and made false statements and provided false documents related to his financial dealings involving Sanovas. *Id.* After he was indicted and released on bond, he violated the terms of the bond by intimidating, harassing, and improperly communicating with his brother, Chris Gerrans, who was the subject of a related FBI investigation. *Id.*

Gerrans was indicted for committing a scheme and artifice to defraud his own company of company funds. *Id.* Counts 1 through 3 alleged he used three wire communications to transfer a total of $580,000 to buy a family home. Counts 4 and 5 respectively alleged he transferred $32,395.77 and $12,5000 for personal expenses using Sanovas funds to which he was not entitled. Count 6 alleged Gerrans committed money laundering by transferring $2,303,966.42 from the Hartford Bank to Stewart Title to purchase a family home. Counts 7 and 8 alleged he made false statements to the FBI concerning false invoices from Halo Management Group to Gerrans and his wife. Count 9 alleged he submitted to the FBI a false "Secured Promissory Note" from Gerrans and his wife to Hartford Legend Capital. Counts 10 through 12 alleged Gerrans committed contempt, witness tampering, and obstruction of justice arising out of his contact with his brother, Chris Gerrans. *Id.* at 1040–41.

Gerrans was found guilty on all counts by a jury. *Id.* at 1041. He was sentenced to a total term of 135 months' imprisonment. *See Gerrans v. United States*, 3:18-CR-310-EMC (N.D. Cal.), Am. J. Crim. Case, ECF No. 355 at 2. This term consisted of 120 months on Counts One through Five, to run concurrently; 120 months on Count Six, to run concurrently; 60 months on Counts Seven through Nine, to run concurrently; five months on Count Ten to run consecutively; five months on Count Eleven to run consecutively; and five months on Count Twelve to run consecutively. *Id.*

Gerrans challenged his convictions and sentences on direct appeal, arguing that he suffered from ineffective assistance of counsel, jury instruction error, prosecutorial misconduct, and a sentencing guideline calculation error. *United States v. Gerrans*, No. 20-10378, 2022 WL 73051, at *2 (9th Cir. Jan. 7, 2022), *cert. denied*, 143 S. Ct. 174 (2022). His convictions and sentences were affirmed.

In his § 2241 petition, Gerrans challenges the execution of his sentence through four specific claims. Pet'r's Pet., ECF No. 1. First, he asserts the Bureau of Prisons (BOP) has ignored the FSA, denied him FSA Earned Time Credits (ETCs), and refused him unlimited time in a halfway house or home confinement. *Id.* at 7. Second, he claims he is forced to live in a BOP facility with an unhealthy water supply and excessive heat. *Id.* Third, he complains he is subjected to cruel and unusual punishment because the BOP has denied him the maximum amount of time in a residential reentry center or home confinement pursuant to 18 U.S.C. § 3624(c). *Id.* Finally, he maintains the BOP has denied him his civil rights because he cannot drink the water which contains an excessive amount of chlorine and arsenic, and he cannot exercise safely due to the high heat index levels in the area. *Id.* at 7. He asks the Court to intervene on his behalf and order Respondent Warden of FCI La Tuna to immediately place him in a residential reentry facility or home confinement to cease the ongoing civil rights violations. *Id.*

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Accordingly, a prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of

3

its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

"[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies." *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). Indeed, a federal court does "not have jurisdiction over grievances related to [the] computation of sentences and sentencing credit until exhaustion of administrative review by the Bureau of Prisons." *Falcetta v. United States*, No. 20-50247, 2021 WL 5766571, at *1 (5th Cir. Dec. 3, 2021) (emphasis added) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *United States v. Wilson*, 503 U.S. 329, 335–36 (1992)). *See also Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010) (per curiam) (agreeing with other circuits that "before the Attorney General has made a determination of a prisoner's credits, there is no case or controversy ripe for review when the prisoner challenges his credits"). Exhaustion in this context means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

As a result, a federal prisoner must use the BOP's multi-tiered administrative remedy program to "seek formal review of an issue relating to any aspect of [his] confinement" before pursuing judicial relief. 28 C.F.R. § 542.10(a). Initially, he must attempt to informally resolve his complaint with the staff with a Form BP-8. *Id.* § 542.13(a). If his informal attempts are

4

unsuccessful, he must submit a written complaint to his warden on Form BP-9. *Id.* § 542.14. If he is not satisfied with the warden's response, he may appeal to his regional director on Form BP-10. *Id.* § 542.15. If still not satisfied, he may appeal to the "Central Office" using Form BP-11. *Id.*

A prisoner may consider the absence of a timely response a denial at that level and proceed to the next level. *Id*. But he may seek relief in federal court only after he has exhausted all levels of the administrative review process. *Woodford*, 548 U.S at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

There are exceptions to the exhaustion requirement which may be appropriate "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile court of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). But such exceptions apply only in "extraordinary circumstances" and a petitioner bears the burden of demonstrating such circumstances. *Id.*

Gerrans concedes that he did not challenge the calculation of his sentence or his conditions of confinement through the BOP's administrative review process before he filed his petition. Pet'r's Pet., ECF No. 1 at 3–4. *See Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (per curiam) (citing *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) ("[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies."). It notes that dismissal for these reasons alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–

78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). His BOP records confirm that, as of January 30, 2025, he had not submitted any formal requests or appeals (Forms BP-9, BP-10, or BP-11) for the specific issues raised in his habeas petition, although he has initiated administrative requests concerning twenty-eight other issues. *See* Resp't's Resp., Ex. 3, Decl. of Johnna Burrows, ECF No. 10-4 at 4 & Attach. 1. He now claims, in conclusory fashion, that "[f]utility doctrine applies." Pet'r's Pet., ECF No. 1 at 3. But he provides no evidence to support his claim. And his projected release date is March 14, 2028, so he has ample time to pursue his administrative remedies. Therefore, there is no dispute that Gerrans has not exhausted his administrative remedies.

Consequently, the Court finds that Gerrans failed to (1) exhaust his administrative remedies before he filed his petition, (2) establish an extraordinary circumstance justifying an exception to the exhaustion requirement, and (3) show that the Court has statutory or constitutional authority to adjudicate his dispute with the BOP. But even if Gerrans's claims were properly exhausted, the Court would still not grant him the § 2241 relief he seeks.

### B. Placement in a Residential Reentry Center or Home Confinement

Gerrans maintains that the FSA mandates that inmates like him should receive "[u]nlimited Home Confinement / Halfway House time." Pet'r's Pet., ECF No. 1 at 7. He asks that the Court "[o]rder Respondents to COMPLY with Congressional Design" and place him in a residential reentry center or home confinement "to cease ongoing Civil Rights violations." *Id.* at 8.

A federal prisoner does not have "a constitutional right to be housed in a particular place or any constitutional right to early release." *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 740 (5th Cir. 2020). A federal prisoner's place of confinement is solely within the discretion of the

6

BOP. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973).

The BOP—not the courts—has the sole statutory authority to "designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b); *see also United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020) (per curiam) ("The [BOP] has the sole authority to designate a prisoner's place of incarceration.") (citing § 3621(b); *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993)). The BOP's "designation of a place of imprisonment … is not reviewable by any court." 18 U.S.C. § 3621(b).

"The term 'imprisonment' refers to any type of custody, including custody in a [community] correctional facility or home confinement program." *Moresco v. United States*, 982 F.2d 529 (10th Cir. 1992) (citing 18 U.S.C. § 3624(c)); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991); *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir.1984); *but see Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091, at *7 (N.D. Tex. Mar. 28, 2007) ("Although [18 U.S.C. § 3621(b)] the statute does not define 'penal or correctional facility,' no one disputes that a RRC or halfway house qualifies. Conversely, home confinement would certainly not qualify."). Consequently, 18 U.S.C. § 3621(b) gives primary authority to the executive branch over any petition pertaining to a prisoner's place of confinement. *See Jalili*, 925 F.2d at 892; *Dragna*, 746 F.2d at 458.

Therefore, the Court finds as a matter of law that it is without authority to order Gerrans's placement in in a residential reentry center or home confinement. *See United States v. Abdulqader*, No. 20-10891, 2021 WL 6102210, at *2 (5th Cir. Dec. 22, 2021) (per curiam) ("This court cannot directly order [prisoner] to serve out the remainder of his term in home confinement.") (citing *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995)); *see also Prows v. Federal Bureau*

*of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.")

Additionally, the Court finds that a federal prisoner is not entitled to "[u]nlimited Home Confinement / Halfway House time." Pet'r's Pet., ECF No. 1 at 7. The maximum time for a prisoner's placement in a pre-release community correctional facility is twelve months. 18 U.S.C. § 3624(c). The maximum time for a prisoner's placement in home confinement is the shorter of ten percent of the term of imprisonment of that prisoner or six months. *Id*.

Here, Gerrans' release date is not until July 5, 2026. He is therefore not eligible for home confinement under § 3624(c) because his remaining term of imprisonment exceeds six months. He is also not eligible to any other form of prerelease custody under § 3624(c), such as placement at an RRC, because his remaining term of imprisonment exceeds 12 months.

So, for all these reasons, the Court again finds it is without authority to order Gerrans' placement in a residential reentry center or home confinement. *See United States v. Abdulqader*, No. 20-10891, 2021 WL 6102210, at *2 (5th Cir. Dec. 22, 2021) (per curiam) ("This court cannot directly order [prisoner] to serve out the remainder of his term in home confinement.") (citing *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995)); *see also Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir.1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.")

### C. Earned Time Credits (ETCs) under the First Step Act (FSA)

Gerrans suggests that the BOP has improperly denied him ETCs. Pet'r's Pet., ECF No. 1

at 7. He asks that the Court order Respondent to award him the ETCs that he believes he is due and immediately place him in pre-release custody. *Id.* 8.

The FSA adjusts the way the BOP calculates good time credits (GTCs) and increases the maximum number of days a prisoner can earn per year from 47 to 54 days. 18 U.S.C. § 3624(b)(1). It entitles a prisoner to apply those GTCs directly toward his sentence and release from BOP custody. *Id.*

The FSA also permits an eligible prisoner to accumulate ETCs for participating in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs). *Id.* § 3632(d). It gives a prisoner the opportunity to earn ten days of ETCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows a prisoner at a "minimum" or "low risk" of recidivating to earn an additional five days of ETCs if he does not increase his risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). But a prisoner is only eligible to have the ETCs applied to his sentence after he "has earned time credits ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *Id.* § 3624(g)(1)(A).

The FSA gives the BOP the discretion to apply ETCs toward a prisoner's prerelease community-based placement in a residential reentry center or home confinement. *Id.* § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). It also gives the BOP the discretion to apply the ETCs toward a prisoner's early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

The maximum time for prisoner placement in a pre-release community correctional facility is twelve months. 18 U.S.C. § 3624(c)(1). The maximum time for prisoner placement in home confinement is the shorter of (1) ten percent of the term of imprisonment of that prisoner, or (2)

9

six months. *Id*. § 3624(c)(2). The maximum time the BOP can grant a prisoner an early transfer to supervised release based on the application of ETCs is 12 months. *Id*. § 3624(g)(3). To be eligible for prerelease custody or early transfer to supervised release, a prisoner must first earn ETCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *Id*. § 3624(g)(1)(A).

So, there are two critical differences between GTCs and ETCs. First, GTCs entitle a prisoner to a reduction in his sentence. ETCs may only be applied toward a prisoner's time in prerelease custody or early transfer to supervised release. Prerelease custody is just another form of BOP custody. Second, unlike GTCs, ETCs are not a general entitlement. Instead, a prisoner must earn ETCs by participating in recidivism-reduction programming.

The BOP projected—and Gerrans does not dispute—that he would receive 607 GTCs during the term of his imprisonment. Resp't's Resp., Ex. 2, Decl. of Bertha Tovar, ECF No. 10-3 at 10. It determined that Gerrans had earned 665 ETCs as of February 10, 2025. *Id.* at 5. It applied 365 of those ETCs toward the date of his transfer to supervised release, which moved his projected release date from March 14, 2029, to March 14, 2028. *Id*.; *see also* 18 U.S.C. § 3624(g) (explaining a prisoner may not apply more than 365 ETCs toward a reduction in his projected release date). It observed that Gerrans' remaining FSA credits totaled approximately 300, and his remaining days of imprisonment totaled approximately 1,128. *Id.* & n.2. As a result, the BOP concluded that Gerrans was not yet eligible for prerelease custody because his ETCs were not "in an amount that is equal to the remainder of [his] imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A).

Gerrans has not replied to Respondent's response to his petition, and he has not challenged the BOP's calculation of his ETCs. Consequently, he has not established that the BOP improperly

10

denied him ETCs. And he has also not shown that he is "in custody in violation of the Constitution or laws or treaties of the United States."

### D. Conditions of Confinement

Gerrans also complains about the quality of the water and the excessive heat at FCI La Tuna in his habeas petition. Pet'r's Pet., ECF No. 1 at 7. He maintains he cannot drink the water due to the high chlorine and arsenic content, and he cannot exercise safely due to the high heat index levels. *Id.*

Habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Unconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release. *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (citing *Carson*, 112 F.3d at 820–21). Even allegations of mistreatment that amount to cruel and unusual punishment do not nullify an otherwise lawful incarceration or detention. *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979). "If a favorable determination ... would not automatically entitle [the prisoner] to accelerated release ... the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997).

In his complaints about the quality of the water and the excessive heat, Gerrans attacks his conditions of confinement independently of any question related to the fact or duration of his detention. He is not entitled to habeas relief on these claims.

### CONCLUSIONS AND ORDERS

The Court concludes that Gerrans has not only failed to exhaust his administrative remedies but also has no constitutional or statutory right through a § 2241 petition to have the Court (1)

11

ensure the BOP applies all his claimed ETCs toward his sentence or (2) order the BOP place him in a halfway house for the maximum amount of time permitted by law. Additionally, the Court concludes that Gerrans' claims alleging violations of his civil rights are not cognizable in a habeas review. Accordingly, the Court further concludes that it lacks the subject matter jurisdiction required to determine the validity of Gerrans's claims—and it should dismiss his petition. The Court therefore enters the following orders:

**IT IS ORDERED** that Petitioner Lawrence J. Gerrans' petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 31st day of March 2025.

_____
**DAVID C. GUADERRAMA**
**SENIOR UNITED STATES DISTRICT JUDGE**